## WOODS v. DROLSON CO., Inc.

### Civ. A. No. 2631.

District Court, D. Minnesota,
Fourth Division.

Jan. 17, 1948.

William S. Kaplan, Chief, Litigation Unit, Regional Rent Office Region VI, of Chicago, Ill., and Alex Dim, Area Rent At-torney of Minneapolis-St. Paul Defense Rental Area, of St. Paul, Minn., for plaintiff.

Levitt & Karlins, of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

This is an action by the Housing Ex-pediter under Section 206(b) of the Housing and Rent Control Act of 1947, 80th Congress, Public Law 129, Chap. 163, 50 U.S.C.A.Appendix, § 1896(b), to enjoin defendant from charging over-ceiling rents and to compel refunds to tenants of any over-ceiling rents already collected. The proceeding is now before the court on plaintiff's motion for a temporary injunction.

The facts are as follows: The Drolson Company, a Minnesota corporation with of-fices at 3 South 8th Street, Minneapolis, is the owner, operator and landlord of a building located at 1425 LaSalle Avenue, Minneapolis. When acquired by the Drolson Company in November, 1943, it was known as Vine Hall. It is a four story brick structure and on June 30, 1947 had 74 rooms, divided into 22 sleeping rooms and 16 apartments, plus 1 basement apartment. The 22 sleeping rooms were furnished and from November, 1943 until February, 1947 received linen and maid service once a week. From February, 1947 until July 28, 1947, no maid service was provided or available to these 22 rooms or any of the apartments, although no reduction in rent accompanied the decreased service. Linen service was received during that period by all of the units except 14 apartments. All but two of the apartments, consisting of bedroom, living room, kitchen and bath, were furnished. Although a telephone in the lobby with extensions on each floor is now available and call buzzers to each room are being installed, the evidence is clear that as of June 30, 1947, no telephone service was available to the tenants unless they had their own phones. Whatever desk or secretarial service was available was of too inconsequential a character to be deemed desk service within the meaning of the Act. The manager of the building was fireman, plumber and janitor and lived in an apart-

ment on the ground floor. His duties as such occupied all of his time. He had no authority to collect or receive rentals. The tenants were under the necessity of going to the company offices at 3 South 8th Street, several blocks distant, to make such payments. There was no bellboy service except to the extent that the building manager's fourteen year old son would sometimes run errands after school, though under no obligation to do so, and he was not an employee of defendant. That Vine Hall is within a defense-rental area was conceded, and defendant in its answer admitted that the rents were increased on September 1, 1947. The pleadings also establish that these increases brought the rents above the ceilings allowable as of June 30, 1947.

The issues of constitutionality of the Act, the validity of the regulations as amended, and the meaning of the phrase "are provided" as it appears in the Act and the regulations, were decided by this court in the case of Woods v. Benson Hotel Corporation, D.C., 75 F.Supp. 743, which is incorporated by reference herein. The applicable regulations are set out in detail in that opinion and will not be repeated here.

The questions remaining to be determined in this case are (1) was Vine Hall on June 30, 1947, an "establishment which is commonly known as a hotel in the community in which it is located"; and (2) did Vine Hall provide the requisite customary hotel services.

■ I am of the view that the weight of the evidence establishes that on June 30, 1947, Vine Hall was not commonly known as a hotel in the community in which it is located. The residents of the building did not think of it as such, nor did civic-minded residents of the area who formed a committee for the purpose among other things of aiding people in securing housing and kept a list of nearby hotels. The building was not advertised as a hotel, nor listed in the telephone book as such. It was not known to the secretary of the local hotel association as a hotel, nor did the manager of a hotel across the street consider it a hotel. The

fact that state and local hotel licenses were obtained in the Spring of 1947 and a sign saying "Vine Hall Hotel" was put up about that time does not persuade the court that Vine Hall was in fact a hotel when consideration is given to the fact that the doors to the building were locked at about 9 or 10 in the evening, that the building never had any transient guests, the laundry facilities and the mail boxes were those of the ordinary apartment house, and no safe for valuables was provided.

I am also of the view that although some limited services were extended tenants that are akin to hotel services, Vine Hall did not on June 30, 1947 provide the tenants with the services required to be provided before an establishment could be decontrolled under the Act and the regulations issued thereunder.

■ Defendant also attempted to show that at some time subsequent to June 30, 1947, Vine Hall was commonly known as a hotel and did provide the requisite services. For example, maid and linen service were claimed to have been made available the last week in July. It is significant that the first application for decontrol was filed the 28th of July, and notices of increases of rent effective September 1, 1947 were mailed to most of the tenants on July 31, 1947. As this court construes the Act, however, the facts as of June 30, 1947 are determinative of the status of the housing accommodations for the purpose of controls. Section 204(b) of the Act reads: "During the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended, and in effect with respect thereto on June 30, 1947 * * *". The act was approved June 30, 1947 and became effective July 1, 1947, and its termination date is February 29, 1948. The reference to June 30th as the controlling date is clear upon a reading of the whole Act. 50 U.S.C.A.Appendix, § 1881 et seq.

Ceiling rents are carried forward as of that date, and exceptions to controls are also determined as of then. To interpret the Act otherwise would make it impossible for it to be administered with any degree of uniformity, since any time an establishment changed its mode of operation it would be necessary to re-examine it in order to determine its status. If an establishment was eligible for decontrol on June 30, 1947, no matter what course it followed subsequent to that time, it remained decontrolled. If it was not decontrollable as of June 30th it remained under control.

Defendant also contended that Vine Hall was eligible for decontrol under Section 1 (b) (8) of the Rooming Houses Regulation as amended August 22, 1947, but that regulation also requires that the customary hotel services be provided just as in the case of hotels, and as has been found defendant does not meet that requirement.

I conclude that plaintiff is entitled to a temporary injunction as prayed. This determination, however, is without prejudice to any rights defendant might have with reference to decontrol of those units created by conversion on or after February 1, 1947, under Section 202 (c) (3) of the Act, and Section 1 (b) (9) of "Controlled Rooms in Rooming Houses and Other Establishments" regulations as amended.

Findings of fact, conclusions of law, and order for writ will be filed in accordance with the foregoing views, and this memorandum will become a part thereof.

An exception is granted defendant.

## Findings of Fact

1. Tighe E. Woods is the duly appointed, qualified and acting Housing Expediter, Office of the Housing Expediter, and brings this motion for a temporary injunction for and on behalf of the United States, pursuant to the provisions of Section 206 (b) of the Housing and Rent Act of 1947, Public Law 129, Ch. 163, 80th Congress, 50 U.S.C.A.Appendix, § 1896 (b), against the defendant, the Drolson Company, Incorporated, organized under the laws of the State of Minnesota, and doing business in the City of Minneapolis, State of Minnesota.

2. The Court has jurisdiction by reason of Section 206 (b) of the Housing and Rent Act of 1947, hereinafter referred to as the "Act."

3. At all times mentioned herein, on and after July 1, 1947, there was continuously in full force and effect, issued pursuant to Section 204 of the Act, 50 U.S.C.A.Appendix, § 1894, the Controlled Housing Rent Regulation (12 F.R. 4331), as amended, hereinafter referred to as the Housing Regulation and the Rent Regulation for Controlled Rooms in Rooming Houses and other establishments (12 F.R. 4302), as amended, hereinafter referred to as the Room Regulation.

4. All of the acts and practices and violations complained of herein as are hereinafter more fully set forth, occurred in the City of Minneapolis, County of Hennepin, and State of Minnesota.

5. Defendant has engaged and is continuing to engage in acts and practices, hereinafter more particularly alleged, which constitute or will constitute violations of Section 206 (a) of the Act and of the Housing Regulation and Room Regulation.

6. The defendant, The Drolson Company, Incorporated, a Minnesota corporation, was at all times material hereto, the owner, operator and landlord of premises consisting of a certain structure situated at 1425 La Salle Avenue, in the City of Minneapolis, State of Minnesota, known as "Vine Hall." It was acquired by The Drolson Company, Inc. in November of 1943.

7. Vine Hall is a four story, brick structure, and on June 30, 1947 contained 74 rooms, divided into 22 sleeping rooms and 16 apartments, plus 1 basement apartment. The 22 sleeping rooms were furnished and from November 1943 until February 1947 received linen and maid service once a week. From February 1947 until July 28, 1947 no maid service was provided or available to those 22 sleeping rooms or any of the apartments, although no reduction in rent was given

to the tenants for decreased services. Linen service was received during that period by all of the units except 14 apartments. All but 2 of the apartments, consisting of bed room, living room, kitchen and bath, were furnished. On June 30, 1947 no telephone service was available to the tenants unless they had their own private 'phones. A pay station telephone was installed in the lobby of Vine Hall on September 16, 1947 with extensions on each floor. Call buzzers to each room are being installed, but at the time of hearing were not ready for use. The desk or secretarial service that was available to the tenants was too inconsequential in character to be termed desk service within the meaning of the Act. The manager of the building was fireman, janitor and plumber, and living in an apartment on the ground floor; his duties as such occupied all of his time. He had no authority to collect or receive rentals. The tenants were under the necessity of going to The Drolson Company office at No. 3 South Eighth Street, several blocks distant, to make such payments. There was no bellboy service, except to the extent that the building manager's 14 year old son would sometimes run errands after school, though under no obligation to do so, and he was not an employee of defendant.

8. At all times material hereto, the lawful maximum rents for the use and occupancy of said dwelling units, constituting rooms or housing accommodations as aforesaid, and located within the Defense-Rental Area of Minneapolis-St. Paul, were duly fixed and prescribed, prior to June 30, 1947, by the Rent Regulation for Housing (8 F.R. 7322), and by the Rent Regulation for Transient Hotels, Residential Hotels, Rooming Houses and Motor Courts (8 F.R. 7334), issued and effective under Section 2 (b) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and for all times after June 30, 1947, by the Room Regulation and the Housing Regulation.

9. Section 202(c) of the Act, 50 U.S C.A.Appendix, § 1892(c), defines the term "controlled housing accommodations" to mean housing accommodations in any De fense-Rental Area, except that it does not include: "(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; * * *."

Section 204(d) of the Act provides that the Housing Expediter is authorized to issue such Regulations and Orders consistent with the provisions of the Act as he may deem necessary to carry out the provisions of Section 204 and Section 202(c).

10. By Section 1 of the Housing Regulation and by Section 1 of the Room Regulation, a hotel is defined as follows: "'Hotel' means any establishment which is commonly known as a hotel in the community in which it is located, and which provides customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service: ided, however, That if 75 percent or more of the units in the establishment are self-contained dwelling units including a bathroom and kitchen and were rented on other than a daily term of occupancy on June 30, 1947, the establishment shall not be considered a hotel for the purposes of this regulation and the Housing and Rent Act of 1947."

Section 1(b) (7) of the Housing Regulation, provides that among other living units excepted from, and to which the Regulation does not apply, are: "(7) Accommodations in hotels, motor courts and tourist homes. (i) Housing accommodations in any establishment which is commonly known as a hotel (See definition of hotel in section 1) in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; (ii) housing accommodations in motor courts; and (iii) housing accommodations in any tourist home

serving transient guests, exclusively: Provided however, That all such housing accommodations referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such accommodations on a form provided by the Expediter within 30 days after July 1, 1947, or within 30 days after such date of first renting, whichever is the later: and Provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said application."

Section 1(b) (8) of the Room Regulation, provides that among other rooms or dwelling units excepted from, and to which the Room Regulation does not apply, are:

"(8) Accommodations in hotels, motor courts, tourist homes and other establishments. (i) These housing accommodations, in any establishment which is commonly known as a 'hotel' (See definition of "hotel" in section 1) in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; (ii) Rooms in any motor court; (iii) Rooms in any tourist home serving transient guests, exclusively; (iv) Rooms in other multiple-unit establishments (see definition "other establishments" in section 1) which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service;

"Provided, however, That all such rooms referred to in this paragraph shall be subject to this regulation unless the landlord filed in the area rent office an application for decontrol of such accommodations on a form provided by the Expediter within 30 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later: And provided, further, That if a landlord fails to file said application for decontrol within the applicable spe-

cified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said application."

Section 1 of the Housing Regulation, as amended, by amendment No. 1 (12 F.R. 5454) and Section 1 of the Room Regulation, as amended, by Amendment No. 1 (12 F.R. 5457) defines a hotel as follows: " 'Hotel' means any establishment which is commonly known as a hotel in the community in which it is located and which provides customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service."

Section 1(b) (7) of the Housing Regulation, as amended, by amendment No. 1 (12 F.R. 5454) provides that among other living units excepted from and to which the Regulation does not apply are: "(7) Accommodations in hotels, motor courts and tourist homes. (i) Housing accommodations in a hotel (See definition of hotel in Section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy services: (ii) housing accommodations in motor courts; and (iii) housing accommodations in any tourist home serving transient guests, exclusively: Provided, however, That all such housing accommodations except housing accommodations in motor courts referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such accommodations on a form provided by the Expediter within 60 days after July, 1, 1947, or within 30 days after such date of first renting, whichever is the later: And provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said application."

Section 1(b) (8) of the Room Regulation, as amended by amendment No. 1 (12 F.R.

5457) issued and effective August 8, 1947, provides among other rooms or dwelling units excepted from, and to which the Room Regulation does not apply are: "(8) Rooms in hotels, motor courts, tourist homes, and other establishments. (i) Rooms in a 'hotel' (See definition of "hotel" in section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service: (ii) rooms in any motor court; (iii) rooms in any tourist home serving transient guests, exclusively; (iv) rooms in other establishments (See definition of "other establishments" in section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy services: Provided, however, That all such rooms, except rooms in motor courts, referred to in this paragraph shall be subject to this regulation unless the landlord files in the area rent office an application for decontrol of such rooms on a form provided by the Expediter within 60 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later; And provided, further, That if a landlord fails to file said application for decontrol within the applicable specified period, such rooms shall be and remain subject to the provisions of this regulation until the date on which he files said application."

By amendment No. 2 issued and effective August 22, 1947 Section 1(b) (8) (iv) of the Rent Regulations for Controlled Rooms (12 F.R. 5699) was amended to read as follows: "(iv) rooms in other establishments (See definition of "other establishments" in section 1) which are occupied by persons who are provided customary hotel services including maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy services. Every landlord of all such rooms referred to in this paragraph (8), except rooms in motor courts, shall file in the area rent office an application for decontrol of such rooms on a form provided by the Expediter within 60 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later."

11. The tenants of Vine Hall did not think that it was commonly known as a hotel in the community. Vine Hall was not known to the secretary of the local hotel association as a hotel, nor did the manager of a hotel across the street consider Vine Hall a hotel. The president of the Loring Park Community Council, consisting of civic minded residents of the area who formed a committee for the purpose, among other things, of aiding people in securing housing, did not think that Vine Hall was commonly known as a hotel in the community. Vine Hall was not advertised as a Hotel. Vine Hall was not listed in the telephone book as a hotel. Vine Hall did obtain a hotel license from the State of Minnesota on March 4, 1947, and from the City of Minneapolis on April 15, 1947. Not one transient guest registered or lived in Vine Hall from November 1943 through December 16, 1947. The doors to the building were locked at about 9:00 or 10:00 in the evening. The laundry facilities and the mail boxes were those of an ordinary apartment house. There was no safe provided for valuables. A great many of the 22 sleeping rooms were permitted to use hot plates for cooking. There are no elevators in Vine Hall.

12. Section 2 of the Room and Housing Regulations provides, in part, that regardless of any contract, agreement, lease or other obligations, heretofore or hereafter entered into, no person shall offer, demand or receive any rent for, or in connection with, the use or occupancy on and after July 1, 1947, of any room and housing accommodation subject to the said Regulations within the Defense-Rental Area higher than the maximum rents provided by the said Regulations; and no person shall solicit, attempt, or agree, to do any of the foregoing.

13. On July 31, 1947 the defendant notified all of its tenants at Vine Hall that the rents would be increased over and above what the maximum rents were as of June 30, 1947, said increase to be effective

September 1, 1947. On June 30, 1947 all of the dwelling units in Vine Hall constituted controlled rooms for housing accommodations within the purview and meaning of the Act and said Regulations in that said rooms or housing accommodations were occupied by persons on June 30, 1947 who were not provided all of the following customary hotel services, to wit: maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy services, and, therefore all of said rooms, as controlled rooms or controlled housing accommodations, are not subject to decontrol under the Act and said Regulation.

14. The defendant, in violation of Section 206(a) of the Act and of said Regulations, did, beginning with September 1, 1947, demand, receive, and has been collecting as rents, from most of the tenants at Vine Hall, for the use and occupancy thereof as dwelling units, amounts in excess of the maximum legal rents established therefor by said Act and said Regulations, and is continuing to collect rents in excess of the maximum legal rents permitted, from the tenants in Vine Hall. As examples of overcharges, for Apartment #101 the rents were increased from the maximum of $56.00 per month to $90.00 per month; for apartment #408, the rents were increased from a maximum of $34.00 per month to $40.00 per month; that for apartment #204, the maximum rent was increased from $34.00 per month to $55.00 per month; that for apartment #208, the rent was increased from a maximum of $34.50 per month to $55.00 per month; apartment #402 from a maximum rent of $56.00 per month to $65.00; apartment #310 from a maximum rent of $59.50 per month to $75.00; apartment #303 from a maximum rent of $14.00 per week to $15.00 per week; apartment #406 from a maximum rent of $34.00 per month to $40.00 per month; apartment #401 from a maximum rent of $59.50 per month to $75.00 per month; apartment #304 from a maximum rent of $34.00 per month to $55.00 per month; apartment B–1 from a maximum rent of $39.50 per month to $45.00 per month. That defendant since September 1, 1947, has continued to collect overcharges in rent at Vine Hall contrary to, and in violation of said Act and said Regulations.

15. Defendant on the 28th day of July, 1947 filed its original application for decontrol on Form D–95 with the Area Rent Office.

16. On September 17, 1947 the Area Rent Office requested that defendant file a new application for decontrol for Vine Hall on revised Form D–95. Defendant filed revised Form D–95 on October 9, 1947. The Area Rent Director did, by order duly issued to defendant on Form D–27C, declare all of the dwelling units in Vine Hall as not decontrolled by the Housing and Rent Act of 1947 for the reason that Vine Hall was not commonly known as a hotel in the community in which it is located on June 30, 1947, and for the further reason that on June 30, 1947 all the dwelling units in Vine Hall did not receive all five (5) of the so-called specified services, namely maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service.

17. Section 204(b) of the Act states as follows: "During the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended, and in effect with respect thereto on June 30, 1947."

18. Defendant's answer admits that the rents were increased to the tenants at Vine Hall on September 1, 1947.

Conclusions of Law

1. This Court has jurisdiction of the parties to, and the subject matter of, this action by virtue of Section 206(b) of the Housing and Rent Act of 1947.

2. The Housing and Rent Act of 1947 is constitutional. It is a proper exercise of the war powers of Congress. It does not violate due process. Congress did not exceed its legislative powers as the Act is not

an unconstitutional delegation of legislative authority to an administrative body.

3. Section 204(d) of the Act expressly authorized the Housing Expediter to issue such regulations and orders consistent with the provisions of the Act as he may deem necessary to carry out the provisions of Section 204 and Section 202(c). The Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments (12 F.R. 4302) and Amendment 1 to said Regulation issued August 8, 1947 and Amendment 2 issued to said Regulation effective August 22, 1947 (12 F.R. 5699) are consistent with Section 204 of said Act and are necessary to carry out the provisions of Section 204 as well as Section 202(c) of the Act. The Housing Expediter has the right to promulgate said Regulations and Amendments and said Regulations and Amendments as applied by the Housing Expediter towards the defendant are not inconsistent with the Act and are valid.

4. Amendments 1 and 2 to the Room Regulations and Amendment 1 to the Housing Regulations are a valid exercise of the regulatory powers of the Housing Expediter and do not retroactively determine defendant's rights under the law in an illegal manner.

5. The order of the Area Rent Director issued by him on October 9, 1947, on form D-27C ruling that all the units in Vine Hall were not decontrolled because these units did not on June 30, 1947 receive all five (5) of the so-called specified services, viz., maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, is a valid administrative order and expressly authorized by Section 204(d) of the Act and said Regulations, as amended, as the Housing Expediter deemed it necessary in order to effectively carry out the provisions of Section 204 and Section 202(c) of the Act and the Regulations, as amended.

6. That at all times from and after July 1, 1947 all the units in Vine Hall constitute controlled rooms and controlled housing accommodations under the Housing and Rent Act of 1947, and the Room Regulation, as amended, and the Housing Regulation, as amended.

7. That all the units, rooms and apartments in Vine Hall are not free from rent controls or eligible for decontrol under the provisions of Section 202(c) of the Housing and Rent Act of 1947, or said Room Regulation, as amended, or Housing Regulation, as amended. This determination, however, is without prejudice to any rights defendant might have with reference to decontrol of those units created by conversion on or after February 1, 1947 under Section 202(c) (3) of the Act and Section 1(b) (9) of the Controlled Rooms in Rooming Houses and Other Establishments Regulation, as amended.

8. That on and after July 1, 1947 the highest maximum rentals that defendant could legally collect from the tenants at Vine Hall were the maximum rentals in effect for such housing accommodations on June 30, 1947.

9. That the defendant has been and is violating the provisions of the Housing and Rent Act of 1947 by demanding, accepting and receiving from said tenants at Vine Hall, rentals therefor in excess of those permitted by said Act and Regulations, as amended.

10. Vine Hall was not commonly known as a hotel in the community in which it was located on June 30, 1947.

11. That June 30, 1947 is the controlling and determining date under said Act for determining eligibility for decontrol.

12. That Vine Hall did not on June 30, 1947 provide its tenants with all of the following services, namely, maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service, and, therefore, is not eligible for decontrol under said Act and said Regulations, as amended.

13. Plaintiff is entitled to an interlocutory judgment for and on behalf of the United States and against the defendant for a temporary injunction under Section 206(b) of the Housing and Rent Act of 1947 temporarily enjoining the defendant, its agents, servants, and employees, and all persons acting in concert or participation with the defendant, or any one of them, until final disposition of this cause or fur-

ther Order of this Court, from: Soliciting, demanding, accepting or receiving, directly or indirectly, as rent for the use and occupancy of the controlled rooms or controlled housing accommodation units in the structure referred to in the complaint as Vine Hall, any amounts in excess of the maximum legal rent established and prescribed by the Housing and Rent Act of 1947 and the Rent Regulation for Controlled Rooms in Rooming Houses and Other Establishments, as heretofore or hereafter amended, and the Controlled Housing Rent Regulation, as heretofore or hereafter amended, or in excess of the maximum legal rent established or prescribed by any other Regulation or Order heretofore or hereafter issued pursuant to the Housing and Rent Act of 1947, or the Regulations as heretofore or hereafter amended or superseded.

Let an interlocutory judgment be entered accordingly.