Margaret Mary J. Mangan, J.
A trial of this action for a declaratory judgment and injunction was had before the court without a jury.
This is an action by both Benedict H. Kraus and Sherman Equities Inc., as plaintiffs, for a declaratory judgment declaring the subject premises, presently called the Hotel Sherman and located at 302 West 47th Street, New York City, to be a hotel and restraining the Commissioner of Buildings from criminally prosecuting Benedict H. Kraus, president of Sherman Equities Inc., for violation" of section D26-3.22 of the Administrative Code of the City of New York prohibiting operation of a rooming house without a permit. The defendant, Commissioner of Buildings, counterclaims for a declaratory judgment declaring the subject premises to be a rooming house and restraining the plaintiffs from occupancy thereof until a permit is obtained *563 for that purpose under section D26-3.22 of the Administrative Code.
On two previous occasions, the Commissioner of Buildings of the City of New York, brought criminal proceedings against Benedict H. Kraus, president of Sherman Equities Inc., for violation of section D26-3.22 of the Administrative Code in operating the subject premises as a rooming house without a permit, and in each instance the Magistrates found the defendant not guilty and dismissed the complaint. A third Magistrate’s summons has been issued, charging the defendant with violation of section D26-3.22 of the Administrative Code but the prosecution thereof has been stayed by consent pending the determination of this proceeding.
A court of equity will not grant declaratory judgment where its effects will be to restrain criminal prosecution, or to interfere with the enforcement of the criminal law, unless the sole question is one of law. In view of the fact that all parties are seeking declaratory judgment, the issue involved whether the subject premises is a hotel or a rooming house will be considered to be one of law; and this court will accept jurisdiction over this action.
The court is called upon to determine whether the subject premises is a rooming house requiring a permit under section D26-3.22 of the Administrative Code of the City of New York, or a hotel which is not subject to the control or jurisdiction of the Department of Buildings of the City of New York.
On the precise issue whether the subject premises is a hotel or a rooming house, the plaintiffs contend that the certificate of occupancy issued to it for “ Multiple Dwelling Class B — Furnished Booms ” does not preclude its use as a hotel, asserting that the use as stated in the certificate applies to hotels as well as rooming house accommodations and that factually the subject premises is a hotel and not a rooming house.
Defendant contends that the certificate of occupancy is controlling, and since it states the use of the premises to be for “ furnished rooms ”, the legal use is a rooming house and not a hotel, and, further, that factually the subject premises is a rooming house and not a hotel.
A history of the subject premises shows that prior to 1929 it was a tenement with stores. The records of the Department of Buildings show that on June 15, 1928, in specifications submitted for certain piping, it was stated in answer to question, “How to be occupied! — rooming house ”. On November 15, 1934, in specifications for alteration, it was stated — “before alteration Furn. Booms — after alteration Class B. Mult. Dwell *564 ing.” On November 8, 1934, in specifications for a sprinkler system, it was stated — “ Present Occupancy — First floor store — 2nd to 5th floors Rooming House. Class B Multiple Dwelling ” and “How to be occupied? — First floor store — 2nd to 5th floors Rooming House.” On November 22, 1934, an affidavit of the then owner, John F. Hill, stated with exception of the ground floor the premises “ has been occupied as a hotel for more than ten (10) years last past ”. On April 17,1934, an application was made for a certificate for furnished rooms Class B Multiple Dwelling, and on April 26, 1935, such a certificate was issued. On December 22, 1958, in an application for a new sprinkler system, it was stated “ How to be occupied? — Stores and Class B M.D.” On June 4, 1957, a rooming-house statement and diagram was filed. On August 31, 1960, in a renewal application by the present owner for a sprinkler system, it was stated “ How to be occupied? — Stores & HC Class B Multiple Dwelling ”. On August 31,1960, under letterhead of11 The Sherman ’ ’, the present owner stated there was ‘ ‘ no change in the structure to this hotel since statements and diagram were originally filed in the Dept, of Buildings ”.
From the foregoing it would appear the appellation of “ rooming house ” and “ hotel ” had been alternatively applied to the subject premises, and there is no factual proof to show whether the subject premises was either a rooming house or hotel or how it was regarded in the community up to September, 1960. The certificate of occupancy issued on April 26, 1935, states the legal use to be “Multiple Dwelling Class B — Furnished rooms ”. It does not say rooming house nor does it say hotel. In absence of a specific designation, the certificate of occupancy may well be consistent with a hotel as a rooming house.
A “ Multiple Dwelling Class B ” classification is applicable to either a hotel or a rooming house. Under subdivision 9 of section 4 of the Multiple Dwelling Law “A1 class B ’ multiple dwelling is a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals. This class shall include hotels ’ ’.
The term “ furnished rooms ” may well be applied to either a hotel or rooming house. There is no statutory definition for a furnished room. It would appear to be single-room occupancy of a room that is furnished (Multiple -Dwelling Law, § 4, subd. 16).
Under State law a ‘ ‘ furnished room house ’ ’ is defined as “ a multiple dwelling, other than a hotel, having less than thirty sleeping rooms and in which persons either individually or as *565 families are housed for hire or otherwise with or without meals. An inn with less than thirty sleeping rooms is a rooming house ” (Multiple Dwelling Law, § 4, subd. 13). Since the subject premises contain 52 sleeping rooms in which persons are housed for hire without meals, the subject premises is not a rooming house under the applicable State statute.
Under the Administrative Code of the City of New York, subdivision 17 of section D26-2.2 defines rooming house and rooming house accommodations: “17. ‘ Room used for class B occupancy.’ Any room in any class A or class B multiple dwelling, which room, singly or in combination with other rooms (a) is resided in transiently as the more or less temporary abode of individuals or families who are lodged with or without meals, or (b) is arranged, designed or intended to be occupied transiently as the more or less temporary abode of individuals or families who are lodged with or without meals, and is not occupied for permanent residence purposes.”
Subdivision 17a of section D26-2.2 defines “Rooms used for Class B occupancy ”:
“17a. (a) ‘ Rooming house.’ A multiple dwelling (regardless of the number of sleeping rooms therein) (i) which is not a hotel or lodging house, and (ii) in which persons, either individually or as families, are housed for hire or otherwise, with or without meals, in any room or rooms used for class B occupancy (see definition of ‘ room used for class B occupancy ’).
“(b) ‘ Rooming house accommodations. ’ Any apartment, suite of rooms, single-room unit or dormitory in a rooming house, which apartment, suite, unit or dormitory consists in whole or in part of any room or rooms used for class B occupancy, or any portion of any such apartment or suite (see definitions of ‘ apartment, ’ ‘ suite of rooms, ’ ‘ single-room unit ’ and ‘ dormitory ’).”
According to these sections, the subject premises is a rooming house unless it falls within the definition of a hotel. Under State law (Multiple Dwelling Law, § 4, subd. 12), “A ‘hotel’ is an inn having thirty or more sleeping rooms ”. However, the Administrative Code lacks a comparable provision. An “ inn ” may be construed as synonymous with the word “ hotel ”. An “ inn ” is commonly understood and accepted as a place where a transient is lodged and fed (Waitt Constr. Co. v. Chase, 197 App. Div. 327).
However, the subject premises does not serve food and, only when requested, orders food for its guests from nearby restaurants. The defendant contends that food is a necessary characteristic of an inn or hotel (Dixon v. Robbins, 246 N. Y. 169). *566 At common law an inn meant a place where a traveler would be furnished food, lodging and entertainment. Food was a necessary service for hotels classified as “ Inns ” in the days of poor transportation. Because of changing times, food is no longer an essential service (Woods v. Drolson Co., 75 F. Supp, 758; Schermer v. Fremar Corp., 36 N. J. Super. 46). All that is essential is that the establishment be commonly lmown as a hotel and be engaged in the business of providing customary hotel services to transients (Woods v. Western Holding Corp., 173 F. 2d 655; Juengel v. City of Glendale, 164 S. W. 2d 610 [Mo.]; Matter of Bayview Hotel v. Temporary State Housing Rent Comm., 12 N Y 2d 423).
In any event the plaintiff contends services of food is not a necessary service for a hotel, since section D26-3.22 of the Administrative Code, requiring a permit for a rooming house, specifically states that the section does not apply ‘ ‘ to any establishment which is a multiple dwelling lawfully used for single room occupancy, is commonly regarded as a hotel in the community in which it is located, and customarily provides hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bell boy service.” In order for the subject premises to be legally constituted a hotel under section D26-3.22, it must
A. be a multiple dwelling;
B. be used for single-room occupancy;
C. be commonly regarded as a hotel in the community in which it is located;
D. provide the customary services of a hotel as therein contained.
(A-B) The subject premises is a multiple dwelling used for single-room occupancy. (C) On the evidence adduced it is regarded as a hotel in the community in which it is located, being listed in the telephone directory as a hotel, maintaining electric neon signs with the inscription “Hotel Sherman ”, having a canopy bearing the legend “ hotel ”, being a member of the Hotel Association in the City of New York, having registered as a hotel with the office of Housing Expediter, Temporary State Housing Rent Commission, New York City Rent Commission, and paying hotel tax to the City of New York. (D) On the evidence, it is shown that the customary services set forth in said section are being furnished. Forty per cent of gross receipts are used for payroll, and the following are the customary services being rendered to the guests: (1) daily maid service; (2) room service; (3) 24-hour desk service; (4) porter *567 service; (5) bellboy service; (6) intercom telephone service; (7) coin-box telephone service; (8) television upon request and coin-operated radio in every room; (9) linens changed daily; (10) owns and uses own linen; (11) call sheets for guests; (12) daily laundry delivery; (13) daily watchman service; (14) registration cards numbered consecutively; (15) resident manager living on premises; (16) control board for all rooms; (17) sprinkler system in all rooms; (18) fire alarm system; (19) owns all furniture and fixtures used in operation of premises; (20) rates on a daily and weekly basis; (21) no cooking permitted.
The word 1 ‘ hotel ’ ’ is not one with a fixed and unalterable meaning; in fact, whether a place is or is not a hotel in a given instance may depend on the particular statute involved or the circumstance of the individual case (City of Columbus v. Baldasaro, 55 Ohio Op. 163; Matter of Von Der Heide v. Zoning Bd. of Appeals of Town of Sommers, 204 Misc. 746; Matter of Lindner v. Frisina, 194 N. Y. S. 2d 843). Under our Administrative Code and related provisions, the word hotel is not defined. It is easier to tell what does not constitute a hotel than what it is. A rooming house and a hotel have much in common, and to differentiate for the purposes intended, one must look to the facts and to statutory law.
On the evidence the subject premises meets the definition of a hotel within the meaning of the definition of subdivision i of section D26-3.22 of the Administrative Code. If the municipality seeks to differentiate between a rooming house and hotel in services within the meaning of the section, it should do so specifically (People v. Reilly, 20 Misc 2d 139). The section as it now stands evinces a purpose to exclude a hotel from its operation and defines what essential services are required; and the subject premises fall within that definition (People v. Reilly, supra).
The New York City Rent, Eviction and Rehabilitation Regulations (§ 3, subd. d) “Additional definitions,” provides for the same essential services. There “ hotel ” is defined: “ ‘ Hotel ’. Notwithstanding any order, finding, opinion or determination of the State Rent Commission any establishment which on March 1, 1950 was and still is commonly regarded as a hotel in the City and which customarily provides hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures and bellboy service, provided, however, that the term ‘ hotel ’ shall not include any establishment which is commonly regarded in the City as a rooming house nor shall it include any *568 establishment not identified or classified as a £ hotel £ transient hotel ’ or ‘ residential hotel ’ pursuant to Federal Act, irrespective of whether such establishment either provides some services customarily provided by hotels, or is represented to be a hotel or both.”
The court does not concern itself with whether the subject premises were commonly regarded as a hotel on March 1, 1950, or identified and classified as a “ hotel ”, “ transient hotel ’ ’ or ££ residential hotel” pursuant to Federal act, since the rent registration of the subject premises has never been cancelled, suspended or revoked.
On all the evidence, the court finds and declares that the subject premises fall within the Administrative Code definition of hotel under section D26-3.22; and a permit for a rooming house should not be required of plaintiffs.
As to the relief sought by way of a permanent injunction, the court is mindful that the premises could deteriorate, causing a legal change of the premises to something less than a hotel, which might properly warrant the issuance of a violation, and to grant an injunction might serve as a deterrent to orderly administrative enforcement in the public good; and accordingly a permanent injunction will not be granted.