OPINION OF THE COURT
Ira Gammerman, J.
This is a holdover summary proceeding brought for the second time by petitioner who again seeks possession of a residential loft located at 19-21 Warren Street, New York City. A brief discussion of the procedural history of this case is necessary before dealing with the substantive issues.
Petitioner originally commenced a holdover proceeding against respondent in January, 1980 alleging a substantial breach of a commercial lease by use of the premises as a residence. In January, 1981, after a lengthy trial, the proceeding was dismissed by Judge Ethel Danzig pursuant to section 325 of the Multiple Dwelling Law, 22 NYCRR 2900.21 (f) and subdivision b of section D26-41.21 of the Administrative Code of the City of New York. Judge Danzig found that the premises were a de facto multiple dwelling for which petitioner had failed to obtain or allege a multiple dwelling registration number. Approximately two months following that dismissal, this second holdover proceeding was instituted. Again, petitioner fails to allege *620 a multiple dwelling registration number. Petitioner maintains that in the period between the institution of the two summary proceedings the premises ceased to be a multiple dwelling and therefore no multiple dwelling registration is necessary. It is petitioner’s position that since one of three residential lofts in the premises has been vacated and remains empty at this time, the building is no longer a de facto multiple dwelling.
Respondent moves to dismiss the petition on the grounds, inter alia, that Judge Danzig’s earlier decision is res judicata on the issue of the status of the premises as a multiple dwelling or alternatively based on the failure of the petition to allege a multiple, dwelling registration number, pursuant to 22 NYCRR 2900.21 (f).
The issue to be resolved, therefore, is whether a building previously found to be a de facto multiple dwelling continues as such even if subsequently one or more units are vacated, leaving fewer than three residential units remaining.
The findings of fact by Judge Danzig were essentially as follows: respondent entered into a lease with petitioner’s predecessor in interest, a Mr. Palestine in March, 1978 to rent the fifth floor east loft at the subject premises. At the time there were two other lofts occupied residentially and legally by artists in residence (AIR). Mr. Palestine had apparently attempted unsuccessfully to rent the space in question on a commercial basis and finally rented it to respondent as combined living-working quarters. At the time Mr. Palestine assured respondent that notwithstanding the “commercial” lease they entered into, respondent could live in the loft without restriction and that such use was “lawful”. Mr. Palestine granted to respondent a three-month concession in rent in order to provide the necessary time for respondent to convert the premises to residential use. Thus, Judge Danzig found that the rental to respondent was with Mr. Palestine’s full knowledge and approval of the residential nature of the tenancy and that such knowledge was passed on to petitioner, Mr. Palestine’s successor in interest, before transfer of the property.
There can be no dispute that at the time respondent moved into the fifth floor loft, the premises were a de facto *621 multiple dwelling. Subdivision 7 of section 4 of the Multiple Dwelling Law defines a multiple dwelling in part as: “a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other.” Further, subdivision 1 of section 4 states that: “[w]herever the word or words ‘occupied,’ ‘is occupied,’ ‘used’ or ‘is uséd’ appear, such word or words shall be construed as if followed by the words ‘or is intended, arranged or designed to be used or occupied.’” Therefore, the definition of a multiple dwelling encompasses both present, actual use and future, intended use or design.
Petitioner, in arguing that the premises are no longer a de facto multiple dwelling, relies on Mintz v Banks (NYLJ, April 19, 1976, p 10, col 2) where the court declined to designate as a multiple dwelling a factory-loft building which had previously included three residential lofts one of which was vacant at the time the summary proceeding was instituted. The court reasoned that since the vacant loft could be used for commercial “rather than” residential purposes, the premises did not fall within the statutory definition of a multiple dwelling. (In fact, the vacant loft could be used for either residential or commercial purposes inasmuch as it was a registered AIR loft).
This court fully recognizes the striking similarity between the present case and Mintz (supra). However, cognizant of the fact that this court is not bound by that decision, and given the wealth of opinions in cases recently decided in this area of the law in this department, the court declines to follow Mintz. Indeed, the Appellate Term in Mintz, ignores Rosario v Koss (26 AD2d 561, amd 26 AD2d 590). There the court held that a two-family house which was in fact occupied by three families living independently of each other, constituted a multiple dwelling, notwithstanding the fact that one of the families had moved out of the premises at the time the cause of action arose. The court stated (p 562) that this move “did not change the character of the premises as a multiple dwelling, particularly since the premises were occupied by three families when plaintiff moved in and continued to be so occupied for eight months thereafter.”
*622 Under the Multiple Dwelling Law, the intended design and use of a particular premises is as important in determining its multiple dwelling status as is the actual use of the space. This point was made in Lipkis v Pikus (96 Misc 2d 581, revd in part on other grounds 99 Misc 2d 518, affd 72 AD2d 697, mot for lv to app granted 73 AD2d 1066) where the subsequent commercial leasing of a residential loft was not deemed to alter the intended use or design of the premises. Rather “the multiple dwelling character and design of this building was unchanged by [the] subsequent occupancy, as current usage is not necessarily, in and of itself, determinative” (96 Misc 2d, at p 595).
In approving and assisting the conversion of the space rented to respondent from commercial to residential quarters, petitioner’s predecessor changed the “character and design” of the premises so as to create a multiple dwelling. Petitioner seeks to alter this “character and design” of the premises by simply refusing to rent vacant loft space, thus reducing the number of residential tenants to less than three. The vacant loft can be legally rented for either commercial or residential purposes. The failure of petitioner to lease the vacant loft to a commercial tenant raises serious questions as to its good faith. The court harbors the suspicion that immediately after the termination of this proceeding the loft will again be rented for residential use. To permit petitioner to impair the security against eviction recently given to residential loft tenants (see Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807; Lipkis v Pikus, supra; Gordon & Gordon v Madavin, Ltd., 108 Misc 2d 349; Sixty-Four Fulton St. Assoc. v Dwyer, NYLJ, May 21, 1981, p 7, col 1) would be to sanction what to the court appears to be a transparent subterfuge.
In light of the foregoing, respondent’s motion to dismiss is granted.