OPINION OF THE COURT
Per Curiam.
Order entered July 16, 1984, insofar as appealed from, is reversed, with $10 costs; the respondents’ motion to dismiss the petitions in these consolidated proceedings is denied and the petitions are thus reinstated; the petitioners’ cross motion to dismiss the first and third affirmative defense and second counterclaim and to strike respondents’ jury demand is granted; and the matter is remanded to the Civil Court for further proceedings consistent herewith.
Petitioner Yolanda Fischer, Robert Fish, Henry Rausman, Anita Milch and Simon Abikhzen, collectively known as the operator of Lincoln Square Home for Adults, is the operator of a private proprietary adult care facility (Social Services Law § 2 [21], [25], [27]) located at 201 West 74th Street, New York, New York. In May 1973 the petitioner purchased these premises, which were then known and operated as the Kimberly Hotel, for the purpose of converting the hotel into an adult care facility. The hotel was completely vacated of all occupants by November 1973 and was thereafter renovated in accordance with plans filed by the petitioner with the State Board of Social Welfare. On December 11, 1975, after renovations were completed, the Department of Buildings issued a new certificate of occupancy in which the premises were classified as a “public building” and “domiciliary care facility”. On February 25,1976, the petitioner secured a certificate from the State Board of Social Welfare permitting operation of the premises as a “private proprietary home for adults” (Social Services Law § 460-b) and it has since operated in that capacity.
In December 1983, the petitioner decided to close this facility. To that end the petitioner, on December 11, 1983, pursuant to Social Services Law § 461-g (1) (e), voluntarily surrendered its operating certificate to the Department of Social Services (hereafter DSS). Social Services Law article 7 and regulations of the DSS, which are admittedly applicable to the petitioner, require that certain procedures be followed in connection with the closing of an adult care facility. Thus, notice of an intent to close a facility must be given the DSS; a plan for the orderly transfer of residents must be submitted to and approved by the DSS (18 NYCRR 486.10 [b]; 487.3 [g]); and the residents must be duly *521 notified of the proposed closing (18 NYCRR 487.5 [¶] [3]). Upon the completion of these procedures and in the event of refusal of residents to remove from the facility, Social Services Law § 461-h specifically provides that the operator of the facility may maintain a “[s]pecial proceeding for termination of adult home and residence for adults admission agreements”.
Upon the refusal of approximately 55 of the facility’s residents to voluntarily vacate the premises, the petitioner, pursuant to Social Services Law § 461-h, commenced these holdover proceedings against those residents and joined as a party respondent the DSS.
Parenthetically, a proceeding pursuant to CPLR article 78 had been commenced in the Supreme Court on behalf of residents of the Lincoln Square Home, in which the petitioning residents sought, inter alla, injunctive relief staying the prosecution in the Civil Court of holdover proceedings against the residents, appointment of a temporary receiver to operate the facility, and revocation of the Commissioner of Social Services’ approval of the relocation plan submitted by the operator of Lincoln Square Home. At the inception of the article 78 proceedings, the Supreme Court had refused to stay the operator of Lincoln Square Home from maintaining special proceedings in the Civil Court against residents of the home. On or about May 16, 1984 the balance of the relief sought by the residents in the article 78 proceeding was denied and the article 78 proceeding was dismissed (Shorter, J.). (Matter of Gale v Perales, NY County, index No. 2838/84.)
Simultaneously with the service of answers to the petitions, the individual respondents moved to dismiss these holdover proceedings upon a ground that the relationship between the petitioner and the individual respondents is that of landlord and tenant and that the premises are subject to the Rent Stabilization Law (RSL; Administrative Code of City of New York § YY51-1.0 et seq.) or, alternatively, the New York City Rent and Rehabilitation Law (Administrative Code § Y51-1.0 et seq.). The petitioner opposed the individual respondents’ motion to dismiss the petitions and cross-moved for dismissal of certain affirmative defenses and counterclaims in the individual respondents’ answers and to strike their jury demand.
In a decision dated April 24, 1984, the court below held (1) that the premises are a multiple dwelling (Multiple Dwelling Law § 4 [7]); (2) that although the facility is governed by the Social Services Law, the Social Services Law is “silent” as to *522 whether the Rent Stabilization Law applies to such premises; (3) that the Rent Stabilization Law does not expressly exempt “adult care facilities”; (4) that the petitioner facility has attributes of a hotel, in that it charges separately for meals provided the residents (the record actually reflects that the cost of meals provided the residents is included in a comprehensive charge), provides a reception desk, housekeeping, linen, laundry service, entertainment and activities programs and beauty and barber shops; (5) that the petitioner is “in fact” a hotel; (6) that, notwithstanding the renovation of the premises and the issuance of the current certificate of occupancy on December 11, 1975, the hotel was “erected” prior to June 1,1969; and (7) that since Administrative Code of the City of New York § YY51-3.1 extends rent stabilization to “dwelling units in all hotels except hotels erected after July first, nineteen hundred sixty-nine, whether classified as a Class A or a Class B multiple dwelling, containing six or more dwelling units, provided that the rent charged for the individual dwelling units on May thirty-first, nineteen hundred sixty-eight was not more than three hundred fifty dollars per month or eighty-eight dollars per week”,[1] the petitioner, to be exempt from the RSL, must establish that rents charged for “individual dwelling units” in the building on May 31, 1968 were more than $350 per month or $88 per week.
The record before the court below at the time of the court’s April 24, 1984 decision contained no evidence as to rents of the premises’ “individual dwelling units” on May 31,1968, and the Civil Court, in its April 24, 1984 decision, while affording the parties an opportunity to secure such evidence, nevertheless granted the individual respondents’ motion to dismiss these special proceedings unless within the time frame provided by the court evidence was submitted “mandating another result”. In the context of this “conditional dismissal”, the Civil Court in its April 24, 1984 decision denied petitioner’s cross motions as moot. In an order entered July 16,1984, the court below deemed the petitioner’s further submission — which was devoid of evidence of rents charged for dwelling units on the premises on May 31, 1968 — as a motion for reargument, and granting reargument, the Civil Court adhered to its original decision of April 24, 1984, and granted the individual respondents’ motion to dismiss these proceedings.
*523 In our view, the Legislature never intended the RSL to apply to adult care facilities operating under the comprehensive statutory and regulatory scheme provided by Social Services Law article 7. Review of both Social Services Law article 7 and the RSL reveals that the two statutory schemes represent wholly separate and essentially incompatible regulatory schemes. On an elemental level, the RSL applies only to certain multiple dwellings (Administrative Code § YY51-3.0), and since we conclude that the petitioner’s facility is not a multiple dwelling, it is necessarily exempt from the RSL. Multiple Dwelling Law § 4 (7) provides in pertinent part: “A ‘multiple dwelling’ is a dwelling which is either rented, leased let or hired out, to be occupied, or is occupied as the residence or home of three or more families[2] living independently of each other * * * A ‘multiple dwelling’ shall not be deemed to include a hospital, convent, monastery, asylum or public institution * * * For the purpose of this chapter ‘multiple dwellings’ are divided into two classes ‘class A’ and ‘class B’ ” (see also, Administrative Code § YY513.1).
We construe the criteria for a multiple dwelling in Multiple Dwelling Law § 4 (7) of residential occupancy by “three or more families living independently of each other”, as requiring that three or more families not only live independently of one another but also that each of the three families live independently. Multiple Dwelling Law § 4 (7) in excluding from the definition “multiple dwelling” “a hospital, convent, monastery, asylum or public institution” reflects what we believe to be an over-all legislative intent to exclude from the definition “multiple dwellings” facilities in which the residents, for whatever reason, are unable to or do not live independently, i.e., maintain independent households.
Social Services Law § 2 (21) makes plain that adult care facilities subject to Social Services Law article 7 were never intended by the Legislature to be constituent residential facilities for those able to live independently. Thus, Social Services Law § 2 (21) expressly provides: “Adult care facility shall mean a family type home for adults, a shelter for adults, a residence for adults or an adult home, which provides temporary or long-term residential care and services to adults who, though not requiring continual medical or nursing care as provided by facilities licensed pursuant to article twenty-eight of the public health law or articles nineteen, twenty-three and thirty-one of *524 the mental hygiene law, are by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, unable or substantially unable to live independently” (emphasis added).
Moreover, in the context of Social Services Law article 7 and in view of the express legislative intent to “assure the life * * * safety and comfort of adults * * * who must be cared for away from their own homes” by regulation of adult care facilities (Social Services Law § 460), the conclusion is inescapable that the individual respondents are dependent on the petitioner’s facility to provide for their care, safety and comfort and do not “maintain a household” either for themselves or for other residents. Consequently, they cannot be considered “families living independently of each other”, so as to constitute the facility a multiple dwelling.
The only relationship of “legal interdependence” here sufficient to support the “maintenance of a household” is that between the operator and the residents (People v Allen, 27 NY2d 108; Matter of Potter v Bennett, 40 AD2d 546). It is the operator who is required by statute and regulation to provide not only shelter, food and housekeeping services, but also a program of dietary supervision, assistance with grooming, dressing, bathing and eating for each resident where necessary, as well as supervise recreation, maintenance of financial records, and help to the residents in obtaining governmental assistance and medical care (18 NYCRR part 488). Therefore, it is the operator, not the resident, who “maintains a household”. (Matter of Surbeck, 185 Misc 635; Matter of Wells, 165 Misc 385; Clark v Clark, 23 Misc 272, 287; compare, Domestic Relations Law § 236; Family Ct Act §§ 412, 413.)
The distinction between what are essentially institutional facilities and what are essentially residential properties is maintained in the New York City Administrative Code, Administrative Code § C26-309.3 classifies nonpenal institutional facilities as occupancy group H-2, which includes “buildings and spaces used for the care or treatment of persons with physical limitations because of health or age” (see, Administrative Code § C26-302.1, Table 3-2, Typical Occupancies for Occupancy Classification, which gives the following as examples of institutional H-2 facilities: “Hospitals; sanitariums; clinics; nursing homes; orphanages; homes for the aged; day nurseries”; emphasis added). The Code reserves occupancy group J for residential buildings with occupancy group J-l — including “buildings and spaces that are primarily occupied for shelter and sleeping *525 accommodation of individuals on a day-to-day or week-to-week basis” (Administrative Code § C26-310.2) and occupancy group J-2 including “buildings with three or more dwelling units that are primarily occupied for the shelter and sleeping accommodation of individuals on a month-to-month or longer-term basis” (Administrative Code § C26-310.3). The petitioner’s facility falls within the H-2 occupancy group and that classification is inconsistent with multiple dwelling status, the latter being logically relegated to the J-l or J-2 occupancy group.
Since hotels are a form of multiple dwelling (Multiple Dwelling Law § 4 [8], [9]), having concluded that the petitioner’s premises are not a multiple dwelling, it necessarily follows that the petitioner’s premises are not a hotel. The logic is supported by the facts. “The word ‘hotel’ is not one with a fixed and unalterable meaning; in fact, whether a place is or is not a hotel in a given instance may depend on the particular statute involved or the circumstance of the individual case” (Kraus v Birns, 39 Misc 2d 562, 567). The statutes involved and the circumstances of this case clearly indicate that the facility in question is not a hotel. The substantial alterations and renovations performed for the purpose of operating an adult home demonstrate a change in the intended use, design and character of the building from a “hotel” to an “adult home” (cf. Ropla Realty Corp. v Ulmer, 110 Misc 2d 619, affd 113 Misc 2d 175).
A “hotel” is described in the Multiple Dwelling Law as “an inn having thirty or more sleeping rooms” (Multiple Dwelling Law § 4 [12]), and by the Administrative Code of the City of New York as “[a] building or portion of it which is regularly used and kept open as such for the lodging of guests” (Administrative Code § VV46-1.0). Neither description is consistent with the definitions of “adult care facility” and “adult home” set forth in Social Services Law § 2 [21], [25], which definitions emphasize “long-term residential care”, and “personal care and supervision” (emphasis added), services not generally provided by a hotel. A facility is the sum of its parts and not a manifestation of any one of them. Clearly the fact that the petitioner provides its residents with certain services generally provided by hotels — i.e., a reception desk, housekeeping, linen, laundry services, entertainment, activities program, beauty and barber shops — does not render the petitioner a hotel where (a) the facility is not open to the general public as is the traditional “inn”; (b) the services performed by the operator for the benefit of the residents far exceed the ordinary and usual services performed by a hotel for its guests; (c) these services are in any event performed by the operator pursuant to the mandate of the Social Services *526 Law and regulations promulgated thereunder, not pursuant to the traditional business of innkeeping, and (d) the City of New York, in issuing its certificate of occupancy, eschewed the term “hotel” and designated the premises as a “domiciliary care facility”.
Even were we to assume that the petitioner were a hotel, it was not one erected prior to July 1,1969 so as to fall within the purview of the RSL (Emergency Tenant Protection Act [ETPA], L 1974, ch 576, § 4 [§ 5 (a) (7)]; Administrative Code § YY51-3.1). The record before us amply demonstrates that the Kimberly Hotel simply no longer exists. As a result of petitioner’s renovations of the premises, the interior structure of that hotel was destroyed and replaced by a new configuration of rooms and facilities compatible with the use of the premises as an adult care facility. In that regard, since the “dwelling units” of the present facility do not conform to the dwelling units of the Kimberly Hotel, the rent charged by the Kimberly Hotel for its dwelling units on May 31, 1968 could not in any event satisfy the prerequisite for rent stabilization provided for in Administrative Code § YY51-3.1.
Even if some doubt might otherwise be said to exist concerning the nature of the legal relationship between the petitioner as operator of the facility and the individual respondents as residents of the facility, that issue is resolved for us by Social Services Law § 461-h (15) and RPAPL 713-a, at least to the extent of precluding the existence of a landlord-tenant relationship between the parties. Both Social Services Law § 461-h (15) and RPAPL 713-a provide in essence that nothing contained in Social Services Law article 7 shall be construed to create a relationship of landlord and tenant between an operator of an adult home or residence for adults and residents thereof.
Only recently the Appellate Term, Second Department, Second and Eleventh Judicial Districts, characterized the relationship between operator of an adult care facility and resident of an adult care facility as that of licensor and licensee (Rosenson v Feigenbaum, NYLJ, Mar. 27,1984, p 11, col 4). While that may indeed be an appropriate characterization of the relationship, we deem the relationship between the adult care facility operator and resident to be largely sui generis, and we perceive no need to characterize that relationship beyond the particular and exclusive elements of the relationship provided for in Social Services Law article 7.
Social Services Law § 461-h (15) and RPAPL 713-a in precluding construction of the relationship as that of landlord and *527 tenant reinforces the concept that the relationship, as a creature of statute, is indeed sui generis, and in so doing removes the relationship from the ambit of the RSL and the ETPA. Both the RSL and the ETPA in application subsume the existence of a landlord-tenant relationship and, in the absence of a landlord-tenant relationship, the RSL and the ETPA do not define the rights of the parties (La Guardia v Cavanaugh, 53 NY2d 67).
In addition to determining that the premises are exempt from the RSL because (1) the premises are not a multiple dwelling, (2) not a hotel, (3) were in any event not erected before June 1, 1969 and (4) no landlord-tenant relationship exists between the parties, we conclude that the RSL is inapplicable to the subject premises because the statutory scheme of Social Services Law article 7, including the extensive jurisdiction of the DSS thereunder, preempts the operation of the RSL in regard to adult care facilities (cf. 1981 Opns St Compt No. 81-220, at 236; because of extensive statutory provision and administrative regulations governing the operation of adult care facilities, the State has evidenced an intent to preempt all local regulation and control, by licensing or otherwise, of such facilities). Manifesting such an intent to preempt the operation of the RSL[3] is the provision in Social Services Law § 461-h for the maintenance under appropriate circumstances of a special proceeding to remove holdover residents of adult care facilities. The statutory scheme of Social Services Law article 7 creates and defines concomitant rights and obligations on the part of operators and residents and through Social Services Law § 461-h provides a specific mechanism for their enforcement. In such situations, the statutorily prescribed remedy, here removal pursuant to Social Services Law § 461-h and RPAPL 713-a, is exclusive. Redress cannot be pursued by resort to another statute (Mossip v Clement & Co., 256 App Div 469, appeal granted 257 App Div 924; McKinney’s Cons Laws of NY, Book 1, Statutes § 395).
Even if the express legislative preclusion of the operator-resident relationship from that of landlord and tenant and the intended exclusivity of the statutorily prescribed remedy are ignored, as they were by the court below, the RSL must be held to be inapplicable to the extent it has been construed to prohibit *528 what the Social Services Law, related regulations and statutes permit. (See, Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99,105; Robin v Incorporated Vil. of Hempstead, 30 NY2d 347; Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, affd 12 NY2d 998.)
Having concluded that the Civil Court’s dismissal of the petitions must be reversed, and the petitions reinstated, we turn to the Civil Court’s denial of petitioner’s cross motion to dismiss the individual respondents’ first and third affirmative defenses and second counterclaim and to strike their jury demand. The first affirmative defense alleges, inter alla, that the petitioner and the respondent DSS have refused to provide the individual respondents with an opportunity to be heard concerning the DSS’ acceptance of the petitioner’s surrender of the latter’s operating certificate and the adequacy of petitioner’s relocation plan. The individual respondents’ third affirmative defense asserts that the petitioner’s relocation plan submitted to and accepted by the respondent DSS was inadequate, illegal, arbitrary and capricious, and accordingly the petitioner’s termination of the individual respondents’ occupancy agreements were improper.
Both the individual respondents’ first and third affirmative defenses are legally insufficient on their face because they constitute a collateral attack upon the determination of an administrative agency and administrative determinations are only subject to review by CPLR article 78 proceedings and are not subject to collateral attack in the context of special proceedings in the Civil Court (Chatsworth 72nd St. Corp. v Rigai, 71 Misc 2d 647, affd 43 AD2d 685, affd 35 NY2d 984). Moreover, as previously noted, an article 78 proceeding was commenced in the Supreme Court on behalf of certain residents of the Lincoln Square Home for Adults, in which these same arguments were presented to the Supreme Court. We take judicial notice of the April 4, 1984 opinion of McCooe, J., and the May 16, 1984 opinion of Shorter, J., which rejected these attacks upon the administrative determinations of the DSS and accordingly dismissed that article 78 proceeding (Matter of Gale v Perales, NY County, index No. 2838/84, supra). The individual respondents are now collaterally estopped from relitigating those issues.
The individual respondents’ second counterclaim seeks attorneys’ fees from the petitioner. No basis for that claim is presented. Social Services Law § 461-h in authorizing this instant proceeding has no provision for attorneys’ fees, and since the underlying occupancy agreements make no provision for *529 recovery of attorneys’ fees by the petitioner, Real Property Law § 234 could not in any event be applicable.
Finally, petitioner’s application to strike the individual respondents’ jury demand should be granted. Social Services Law § 461-h (9) provides that special proceedings authorized by Social Services Law § 461-h “shall be tried by the court” (see also, Rosenson v Feigenbaum, NYLJ, Mar. 27,1984, p 11, col 4, supra) in which the Appellate Term, Second Department, held that a resident respondent in a special proceeding brought pursuant to Social Services Law § 461-h does not have a right to have issues of fact tried by a jury.
Hughes, J. P., Sandifer and Parness, JJ., concur.

. Since the premises were completely vacated by November 1973 (see, Administrative Code of City of New York § YY51-3.0 [a] [2]; § Y51-12.0) if the premises were subject to rent regulation it would be pursuant to the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [§ 5 (a) (7)]).

. Multiple Dwelling Law § 4 (5) provides: “A ‘family’ is either a person occupying a dwelling and maintaining a household * * * or two or more persons occupying a dwelling, living together and maintaining a common household”.

. The Rent Stabilization Law (RSL), in contrast to Social Services Law article 7, regulates the “normal market for free bargaining between landlord and tenant” due to the extant residential housing emergency in New York City; enforcement of the RSL is largely relegated to the State Division of Housing and Community Renewal (which succeeded to the jurisdiction of the Conciliation and Appeals Board [Administrative Code § YY51-6.0.5]).